# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 03 CR 689 - 25 |
| v. ) | |
| ) | Judge Joan B. Gottschall |
| JOAQUIN ILDEFONSO MENDEZ-GARCIA ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

### BACKGROUND

Defendant Joaquin Ildefonso Mendez-Garcia has asked this court to reconsider its conclusion that he was responsible for six kilograms of powder cocaine. The jury's verdict established that Mendez-Garcia was responsible for more than 500 grams and less than five kilograms, but this court concluded during Mendez-Garcia's first sentencing hearing, although it struggled with the preponderance of the evidence standard as it applied to the government's evidence, that for sentencing purposes Mendez-Garcia was responsible for six kilograms. This finding is important, for if Mendez-Garcia is responsible for more than or equal to five kilograms, a statutory minimum sentence of twenty years is required.[1] If less than five kilograms are attributed to Mendez-Garcia, a ten-year mandatory minimum applies.

The government argues that Mendez-Garcia was the supplier for three sales of cocaine by co-defendant Magin Villaseñor ("Magin"), on January 10, 2003, January 24, 2003, and February 12, 2003. The court has already ruled that the January 10 sale cannot be attributed to Mendez-Garcia. This leaves only the January 24 sale and the February 12 sale. In short summary, the January 24 sale involved two kilograms, sold to co-defendant Stevie Jones, who testified to that amount at trial.

---

[1] Though the five-kilogram threshold normally imposes only a ten-year sentence, it is doubled in this case because of a prior felony drug conviction. 21 U.S.C. § 841(b)(1)(B).

Jones bought the drugs from Magin, but did not know the original source. The February 12, 2003 sale involved approximately four kilograms,[2] again sold by Magin to Jones. These drugs were confiscated by the police from Jones and weighed.

These two sales are the only relevant sales for purposes of Mendez-Garcia's sentencing. After reconsideration and with the benefit of both parties' written submissions, the court concludes (although still struggling with the preponderance of the evidence standard as applicable to this evidence) that it has not been established by a preponderance of the evidence that Mendez-Garcia supplied all the drugs sold on January 24. The court declines to reconsider its determination regarding the February 12 sale, as it will no impact on Mendez-Garcia's minimum sentence.

## ANALYSIS

**I.     Burden of Proof**

In *United States v. Harris*, 536 U.S. 545 (2002), the Supreme Court held that factual questions essential to determination of the length of a mandatory minimum sentence could be decided by a judge based upon a preponderance of the evidence standard if the factual questions were sentencing factors rather than elements, a determination to be made based upon the structure of the statute defining the offense. In *United States v. Duncan*, 413 F.3d 680, 683 (7th Cir. 2005), following *Harris*, the Seventh Circuit held that the line of cases culminating in *United States v. Booker*, 543 U.S. 220 (2005) does not overrule *Harris* or "affect the imposition of statutory minimum sentences." The same conclusion specifically for mandatory minimums in drug cases was reached in *United States v. Clark*, 538 F.3d 803 (7th Cir. 2008). Accordingly, while Mendez-Garcia has made the argument that he should not be subjected to a twenty-year sentence based on facts

---

[2] 3.953 kilograms were actually recovered by law enforcement agents, though this small difference is not material to the statutory minimum calculations.

found by a judge applying a preponderance of the evidence standard, the Seventh Circuit, in precedent binding upon this court, has ruled that mandatory minimum sentencing based upon such judicial fact-finding is allowable.

**II.     January 24, 2003 Sale**

Jones testified at trial that he and an accomplice purchased two kilograms of cocaine from Magin on January 24, 2003. The government argues that Mendez-Garcia was the supplier of these two kilograms by pointing to a wiretap from February 19, 2003, involving a conversation between Mendez-Garcia and Magin. Mendez-Garcia asks whether "the black guy" had called Magin, which all parties agree is a reference to Jones. Magin said the black guy was coming on Tuesday, that is, January 21, 2003. Magin asked Mendez-Garcia to obtain "a couple of cards." A "card" is a kilogram of cocaine, and a couple of cards would be a couple of, or two, kilograms of cocaine. Jones did not appear on January 21, but he met with Magin on January 24, and he purchased two kilograms. On the same day, a few hours before the sale, Mendez-Garcia called Magin and stated that he was "downstairs," which places Mendez-Garcia at Magin's residence shortly prior to the sale. The government argues from these facts that Mendez-Garcia supplied the two kilograms that Jones purchased.

This recitation of facts is not entirely complete. Magin did ask Mendez-Garcia if he could obtain a couple of cards, but it is not clear from the phone conversation that Magin was making this request in anticipation of a sale to Jones. The relevant part of the wiretap transcript reads as follows:

| | |
|---|---|
| MENDEZ: | Did the black guy call you? |
| VILLASEÑOR: | Yes, I think that he is coming over on Tuesday. |
| MENDEZ: | Alright. |
| VILLASEÑOR: | Yeah. |
| MENDEZ: | Alright, what . . . what and has Tony called you? |
| VILLASEÑOR: | Oh, yes! It's good that you reminded me dude. That uh . . . about you told him that . . . that if it can be taken over there . . . the cards. |

3

| | |
|---|---|
| MENDEZ: | Oh. |
| VILLASEÑOR: | He wants to see if you can get him a couple of cards? |
| MENDEZ: | Alright, this . . . Let me see . . . what's going on with my guy's stuff.  I'm going to call over there, to find out if they are almost here. |
| VILLASEÑOR: | Okay. |

Call # 642 (Jan. 19, 2003).  "Tony" is not identified; at the hearing held on July 1, 2009, the government identified "Tony" as probably Marco Antonio Villaseñor, a co-defendant and relation of Magin's.

During this conversation Magin and Mendez-Garcia are at first discussing Jones, but when Magin asks for a couple of cards and Mendez-Garcia states that he will check with his supplier to see if he can obtain a couple of cards, it appears that they are talking about a request from *Tony* for a couple of cards, not a request from Jones.  The government contends that Mendez-Garcia and Magin had returned to discussing Jones when they spoke of a request for two cards, but this is not how the text of the conversation appears, and it is therefore rather speculative.  The reference to Tony appears truncated and incomplete without the next sentence specifying the amount he was seeking. Moreover, it appears from the conversation that "he" wants to know if "you" (meaning Mendez-Garcia) "can get him a couple of cards."  Since there is no evidence that Jones ever specified a source of supply, and Jones testified that he did not know the source of supply, it is hard to believe that Jones asked Magin if Mendez-Garcia could get him two cards.

Besides this telephone call, and the subsequent telephone call placing Mendez-Garcia at Magin's residence some hours before the sale to Jones, there is no evidence that Mendez-Garcia sold Magin all or part of the cocaine that Magin delivered to Jones.  All parties agree that Magin had multiple suppliers; Mendez-Garcia was not the only one.  From this conversation, it surely appears more likely than not that Mendez-Garcia was supplying some drugs to Magin, for some purpose.  But without reference to a specific quantity, or a clearer reference to the ultimate recipient of the

4

drugs, the court cannot conclude, even by a preponderance of the evidence, that Mendez-Garcia was responsible for two kilograms, or any specific amount, for the January 24 sale. While the court is hardly certain of where the line falls between a preponderance of the evidence and mere speculation, it concludes that this evidence is too speculative to sustain the weight the government asks the court to give it. For the same reason, it cannot be said that Mendez-Garcia was responsible for greater than five kilograms.

## CONCLUSION

Mendez-Garcia is responsible for an indeterminate amount of powder cocaine greater than 500 grams but less than five kilograms. Mendez-Garcia's mandatory minimum sentence is ten years.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 10, 2009